IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICTOR TEON LINDSEY, II,** | : | CIVIL NO. 1:CV-13-3102 |
| Petitioner, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| **J.E. THOMAS,** | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Victor Teon Lindsey, II ("Petitioner"). Petitioner is an inmate currently confined at the United States Penitentiary at Lewisburg, Pennsylvania. He alleges that his due process rights were violated during a disciplinary hearing after which he was found guilty of the prohibited act of "Fighting with Another Person," in violation of Code 201. (Doc. No. 1, Pet. at 2.) The petition is ripe for consideration and, for the reasons that follow, will be denied.

**I.    Factual Background**

Petitioner is serving a 181-month federal sentence imposed by the United States District Court for the District of New Mexico following his conviction on various drug and firearms charges. On April 28, 2009, while confined at USP-Big Sandy, Kentucky, Incident Report No. 1862577 was issued against Petitioner by Officer Gary Smith charging him with a Code 201 violation for "Fighting with Another Person." (Doc. No. 5-1 at 9.)[1]  Smith described the incident as follows:

---

[1] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Court's official electronic case filing system (CM-ECF), rather than the page number of the original documents.

> On 4-28-09 at 9:49 am hours I, Sports Specialist Gary Smith, observed inmate Lindsey, #19944-051 and inmate [redacted] arguing. I then observed inmate Lindsey strike inmate [redacted] with a closed fist to the upper torso. I then observed both inmates attempt to strike each other with closed fist.

(Id. at 9.)

On April 29, 2009, investigating officer Lieutenant M. Williams provided Petitioner with a copy of the incident report and advised him of his right to remain silent. Petitioner chose to act upon this right at that time. The investigating officer obtained memoranda from other staff members who were present at the scene describing the incident in the recreation yard on April 28, 2009, in addition to photographs and medical assessments of the inmates. The matter was thereafter referred to the Unit Discipline Committee ("UDC") for further disposition. Matthews also noted that Petitioner declined to call witnesses on his behalf. (Id.)

On May 5, 2009, Petitioner appeared before the UDC. The UDC noted that the hearing was held more than 72-hours after the incident report was issued due to the lack of available staff. (Doc. 5-1, ¶ 20.) The UDC referred the matter to a Discipline Hearing Officer ("DHO") based on the reported evidence, and because the seriousness of the charge warranted consideration for sanctions higher than available to the UDC. (Id. ¶¶ 19-20.) At the conclusion of the UDC hearing, Petitioner was provided with, but refused to sign, a Notice of Discipline Hearing before the DHO and Inmate Rights at Discipline Hearing forms. (Doc. No. 5-1 at 11-12.) Petitioner did request that Mrs. Gable serve as his staff representative, and that another inmate appear as a witness at his DHO hearing to testify that there was no fight. (Id. at 11.) Because Petitioner refused to sign the Inmate Rights at Discipline Hearing form, a staff member signed the form and indicated that he had personally advised Petitioner that he had the following rights at the DHO hearing:

1. The right to have a written copy of the charge(s) against [him] at least 24 hours prior to appearing before the [DHO];

2. The right to have a full-time member of the staff who is reasonably available to represent [him] before the [DHO];

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in [his] behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. [His] silence may be used to draw an adverse inference against [him]. However, [his] silence alone may not be used to support a finding that [he] committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendars days of notice of the DHO's decision and disposition.

(Id. at 11-12.)

Petitioner appeared before DHO T. S. Mortimer for his disciplinary hearing on May 22, 2009. The DHO again advised him of his rights. (Doc. No. 5-1, DHO Report § I(C).) He was informed that the staff representative he requested declined or was unavailable to attend the hearing. When given the option to postpone the hearing to obtain another staff representative, Petitioner chose to waive his right to a representative and requested that the hearing proceed. (Id. § II.) Further, although Lindsey had initially requested that a fellow inmate testify on his behalf at the hearing, he now chose to waive the appearance of the witness. (Id.§ III(B)(3).)

3

Following the hearing, the DHO reported as follows:

> Your due process rights were read and reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present, and chose to waive the appearance of a previously requested witness. You further indicated your wish to waive a staff representative.
>
> The DHO took administrative notice that your initial hearing conducted by the Unit Disciplinary Committee (UDC) was delayed due to a staff shortage. This delayed hearing was documented by the UDC in section 20 of this incident report. The DHO determined the delay caused you no appreciable harm and did not have a negative impact on your ability to marshal a defense.
>
> The DHO took administrative notice that pen\ink changes were made to sections 2 and 13 of the incident report. Your first name was added to section 2. The time the incident report was written was changed and initialed. You state you did not receive a copy of the incident report with these changes. You were advised of your right to have a copy of the incident report and that another copy of the incident report would be issued to you by staff. The hearing would be rescheduled to allow you a minimum of 24 hours to prepare. You stated that you do not want another copy of the incident report and requested this hearing proceed.

(Id. § V.)

At the hearing, Petitioner denied the charges that he was fighting. He claimed he did not throw a punch and that the tower office shot for no reason. (Id. § III(A)(B).) The DHO considered the incident report, the investigation, photographs, the injury assessments for Petitioner and the other inmate, and a memorandum from Senior Officer Specialist M. Herald. (Id. § III(D).)

Based on the foregoing, the DHO concluded that Petitioner committed the prohibited act as charged. He arrived at this conclusion based on the written eyewitness account of the reporting officer who observed Petitioner and another inmate arguing on April 28, 2009, and then saw Petitioner strike the other inmate with a closed fist. The DHO also considered a memorandum from Officer Herald that reported as follows:

> [O]n April 28, 2009 at 9:49 a.[m.], two inmates began fighting on the basketball court. The verbal warning system was activated, the inmates still continued fighting, one aerial diversionary round [] was then fired from the Remington 870, inmates complied as responding staff arrived.

(Id.) In reviewing the photographs of the inmates, the DHO noted that neither inmate sustained injuries. In considering Petitioner's statement that he was not fighting, the DHO noted that no evidence was provided to substantiate such testimony. As such, the DHO "gave the greater weight of the evidence to the statements of the reporting staff, acknowledging their duty and obligation to report the truth and submit accurate statements." (Id.) Although neither inmate was injured, the DHO noted that "a fight is defined as a hostile verbal or physical encounter between two or more persons." (Id.)

Petitioner was sanctioned to the disallowance of twenty-one days of good conduct time and fifteen days disciplinary segregation (suspended after 180 days of clear conduct). The DHO's written decision was issued on June 3, 2009, and a copy of the report was delivered to him on August 21, 2009, and he was advised of his appeal rights. (Doc. No. 5-1 at 16, DHO Report §§ VI, VII, X.)

The instant habeas corpus petition was filed on December 30, 2013. Petitioner challenges the disciplinary action against him claiming that his due process rights were violated because the DHO refused his request for a staff representative to assist him in gathering information on his behalf and, as such, did not provide him with a fair hearing. (Doc. 1, Pet. at 7.)

## II. Legal standard

The BOP has established regulations setting forth the procedures for inmate discipline

hearings.  See 28 C.F. R. Section 541.10 et seq.[2]  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate institutional rules.  The first step requires preparing an incident report and referring the matter for investigation.  See 28 C.F.R. § 541.14.  Following the investigation, the matter is then referred to the Unit Discipline Committee (UDC) for an initial hearing pursuant to 28 C.F.R. § 541.15.   The UDC may itself determine whether a prohibited act was committed or refer the case to the DHO for further hearing.  See 28 C.F.R. § 541.15(f).  The DHO has the authority to dismiss any charge or to find a prohibited act was committed and impose any available sanction for the act.  Id. § 541.18.  The DHO proceeding is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.17.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974.)  Greatest category offenses carry a possible sanction of loss of good conduct time credits.   When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1)  written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-66.  The DHO's decision is required to be supported by some evidence in the record.  See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-

---

[2] These guidelines were amended in August 2011 and are now found at 28 C.F.R. § 541.5, et seq.  Because the disciplinary action in this case was conducted in 2009, the regulations in effect at the time are being utilized.

03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

### III. Discussion

#### A. Exhaustion

Respondent first maintains that the petition is subject to dismissal due to Petitioner's failure to exhaust his available administrative remedies. Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241. Speight v. Minor, 245 F. App'x 213, 215 (3d Cir. 2007); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested

conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Courts, however, have excused exhaustion when it would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998)(Roth, J., concurring0(exhaustion excused upon petitioner demonstrating futility); Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir. 1988)(exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

The Bureau of Prison's Administrative Remedy Program is set forth at 28 C.F.R. § 542.10, et seq. In order for a federal prisoner to exhaust his administrative remedies, he must comply with the BOP's grievance process set forth therein for the relevant time. See 28 C.F.R. §§ 542.10 through 542.19 (revised as of July 1, 2009). Appeals of DHO decisions must be submitted initially to the Regional Director for the region where the inmate is housed (on a BP-10 form) within twenty days of the DHO decision.[3] See § 542.14(d)(2). From there, the inmate may appeal (BP-11) to the General Counsel (Central Office) within thirty days of the date the Regional Director signed the response. See § 542.15(a). This step is the final administrative appeal, and its completion constitutes exhaustion of administrative remedies. The BOP will consider a late appeal upon a showing of a "valid reason" for the delay. Id. "In general, valid reason for delay means a situation which prevented the inmate from submitting the request

---

[3] In addressing the matter of "Appeals from DHO," 28 C.F.R. § 541.19 provided as follows:

> At the time DHO gives an inmate written notice of its decision, the DHO shall also advise inmate he may appeal the decision under Administrative Remedy Procedures (see part 542 of this chapter). An inmate's initial appeal of a decision of DHO should be filed directly to the appropriate Regional Office.

within the established time frame." See § 542.14(b).

In the instant case, Respondent states that since Petitioner's designation to the BOP, he has filed a total of sixty-six administrative remedies. (Doc. 5-1, Ex. 1, Knepper Decl. ¶ 7.) With respect to the Incident Report at issue in this action (# 1862577), he filed Administrative Remedy 544963-R1, but the appeal was rejected because Petitioner filed it with the wrong Regional Office. (Id. at ¶ 8.) Although the rejection notice informed Petitioner that he could submit the appeal to the Mid-Atlantic Region, he failed to do so. See id.

Petitioner later filed a number of administrative appeals with respect to various prison matters between October and December 2013. During this time period, the only Administrative Remedy wherein he attempted to appeal Incident Report #1862577 was Administrative Remedy 754070-R1, filed on October 10, 2013. This remedy was rejected as untimely. (Id. ¶ 8; Attach. D, Administrative Remedy Generalized Retrieval at 18.) Petitioner thereafter attempted to appeal this rejection to the Central Office on November 12, 2013. (Doc. No. 5-1 at 46, Administrative Remedy 754070.) The appeal was rejected as untimely. The rejection notice informed Petitioner that he could provide a staff memorandum to the regional office to state the reason for his untimely submission. (Id.¶ 30; Doc. No. 5-1 at 46.) However, he failed to pursue the matter further. Based on the foregoing, Respondent maintains that the pending habeas petition should be dismissed because Petitioner failed to exhaust administrative remedies.

In response to this argument, Petitioner claims that he was unable to timely present his administrative remedies because the DHO withheld his report. It appears he seeks to excuse exhaustion because the DHO report was signed and dated June 3, 2009, but not delivered to him until August 21, 2009. (Doc. No. 5-1 at 16, DHO Report § IV.)

The Court is not persuaded by Petitioner's explanation for his failure to exhaust. He appears to rely on 28 C.F.R. § 541.17(g), which states that the DHO will provide the inmate a written copy of the decision and disposition "ordinarily" within ten days of decision. See § 541.17. While neither party disputes that the DHO did not provide a copy of the DHO report to Petitioner until August 21, 2009, it appears Petitioner first attempted to file an appeal from the DHO decision without first having a copy of the report, but filed it with the wrong Regional division. Although he was given the opportunity to pursue it with the proper Regional Director, he did not do so.

Following his actual receipt of the DHO Report on August 21, 2009, Petitioner did not pursue an appeal at that time with the Regional Director. Rather, he waited until October 10, 2013 to do so. His appeal was rejected as untimely in that it was not filed within twenty days of his receipt of the report. (Doc. No. 1, Pet. at 12.) He then filed an appeal with the Central Office which was also rejected as untimely. (Id. at 10.) The rejection notice informed him that he could provide a staff memorandum to the regional office to state the reason for his untimely submission. However, no further action was taken by Petitioner. (Doc. 5-1 at 46.)

A DHO's "failure to give an inmate a written copy of its decision within ten (10) days should not entitle an inmate to habeas relief so long as the delay had no prejudicial effect on an administrative appeal." Staples v. Chester, 370 F. App'x 925, 930 (10th Cir. 2010) (citing Cook v. Warden, Fort Dix Corr. Inst., 241 F. App'x 828, 829 (3d Cir. 2007). The claims raised in the instant petition for writ of habeas corpus appear to be unexhausted in that the DHO's failure to provide Petitioner with a copy of the DHO report within ten (10) days did not necessarily prejudice him from pursuing his administrative appeals. Petitioner could have pursued an appeal

10

with the Regional Director within twenty days of his receipt of the DHO report on August 21, 2009. Moreover, even after the rejection of his late administrative remedy attempt, he could have provided a valid reason for the delay, ie., delayed receipt of the report from the DHO. Because he failed to do so, the claims raised in the instant habeas petition are unexhausted.

**B.     Merits**

Even if the Court were to find Petitioner's claims to be exhausted for purposes of filing this matter, the petition is without merit in that the procedural requirements of Wolff and Hill were met in the instant case. Petitioner timely received a copy of the Incident Report on April 29, 2009, the day following the incident. Minor corrections were noted on the copy of the incident report possessed by the DHO at the hearing on May 22, 2009. As such, the DHO afforded Petitioner the opportunity to delay the hearing to allow a corrected version of the incident report to be provided to him in advance of the DHO hearing. Petitioner opted instead to proceed with the hearing at this time.

On May 5, 2009, well in advance of 24 hours before the DHO hearing was conducted, Petitioner was informed of his inmate rights at the hearing.[4] While Petitioner claims that he was not provided with the opportunity to make a statement at the hearing, the record clearly belies this assertion. The DHO report documents that Petitioner was not only afforded the opportunity to make a statement, but that he in fact made a statement. In the report, Petitioner's statement was summarized and provided that he claimed he was not fighting, never threw a punch and that the tower officer shot for no reason. (Doc. No. 5-1 at 14.)

---

[4] The record reveals that Petitioner refused to sign the Notice of Discipline Hearing Before the DHO form as witnessed by Counselor R. Lee. (Doc. No. 5-1 at 11-13.)

In his DHO hearing, Petitioner was also given the opportunity to present documentary evidence, as well as have a staff representative. In his habeas petition he does not claim he was prevented from submitting documentary evidence. He does allege that he was denied a staff representative. Prior to the hearing, he requested the presence of Mrs. Gable to serve as his staff representative at the hearing. However, this staff member was unavailable on the date of the hearing. The DHO provided Petitioner with the opportunity to postpone the hearing in order to obtain another staff representative, but he chose to waive a representative and proceed with the hearing without one. (Id. at 14.) In addition, when first notified of the DHO hearing, Petitioner requested that a fellow inmate (J. Massongille) appear at the hearing to testify on his behalf. However, on the date of the hearing, Petitioner chose to waive the appearance of this witness. (Doc. No. 5-1 at 14.)

The report prepared by the DHO following the hearing fully documents the evidence the DHO considered in making his determination, and explained the reasons for the sanctions imposed. (Doc. NO. 5-1 at 15-16.) Petitioner was notified of his appeal right, and provided with a copy of the report on August 21, 2009. As such, the DHO hearing complied with all of the Wolff procedural due process requirements.

In addition, the record demonstrates that the DHO met the evidentiary standard when he determined that Petitioner committed the prohibited act. He considered the evidence outlined above, including the eyewitness account of Sports Specialist G. Smith, the memorandum from Senior Officer Specialist M. Herald, Petitioner's statement, photographs, and injury assessment reports. (Id.) As supported by the record, the DHO's decision meets or exceeds the "some evidence" standard. For these reasons, even if the claims in the instant petition were exhausted,

they are without merit.  An appropriate order follows.